IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL RHODES                                                    PLAINTIFF

v.                              Case No. 4:26-cv-4006

EDWARD D. JONES & CO., L.P.                                       DEFENDANT

## ORDER

Before the Court is Defendant Edward D. Jones & Co., L.P.'s ("Edward Jones") Motion to

Compel Arbitration.  ECF No. 13.  Plaintiff Michael Rhodes ("Rhodes") has responded.  ECF No.

16.  Edward Jones has replied.  ECF No. 19.  The Court finds the matter ripe for consideration.

## BACKGROUND

In February 2017, Edward Jones hired Rhodes as a financial adviser at its Texarkana,

Arkansas location.  Prior to his hiring, Rhodes signed multiple forms and agreements.  The

Financial Advisor Employment Agreement ("FAEA") was Rhodes's employment contract with

Defendant.  ECF No. 14-1, p. 6-11.  Paragraph 17 of the FAEA contains an Arbitration Clause

which states:

> You agree that any dispute, claim or controversy arising under this Agreement or
> as a result of your employment with Edward Jones between you and Edward Jones
> or any present or former employee, agent, officer, director, affiliate, or partner of
> Edward Jones shall be resolved by arbitration and without resort to litigation in
> court. Any arbitration proceedings shall be conducted in accordance with the
> FINRA rules then in effect. This agreement to arbitrate disputes shall survive the
> termination of your employment with Edward Jones.

FAEA ¶ 17.  The FAEA also states that it is a "Missouri contract and governed by the law of

Missouri, or, if applicable, by controlling federal law under precedent from the Eighth Circuit."

FAEA ¶ 22.

Rhodes also executed a required "Form U-4", which is a "Uniform Application for Securities Industry Registration or Transfer." ECF No. 14-2, p. 10-23. The Form U-4 contains a section that reads "I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated[.]" Form U-4, § 15A(1) (italics in original). Pursuant to Financial Industry Regulatory Authority ("FINRA") rules, Rhodes signed Edward Jones's FINRA Arbitration Disclosure Agreement ("FINRA Agreement") with submission of his Form U-4.[1] ECF No. 16-1, p. 5-11. Paragraphs 1 and 2 of the FINRA Agreement state that:

> You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at FINRA only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

FINRA Agreement, ¶¶ 1-2.

On November 22, 2024, Edward Jones terminated Rhodes's employment. On February 11, 2026, Rhodes filed the instant action against Edward Jones. ECF No. 2. Rhodes brings claims pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that Edward Jones discriminated against him on the basis of race when it terminated his employment.[2] On

---

[1] "FINRA, a self-regulatory organization created under the Securities and Exchange Act, regulates the financial industry with approval by the Securities and Exchange Commission." *Luis v. RBC Capital Mkts., LLC*, 984 F.3d 575, 577 (8th Cir. 2020). "FINRA has the authority to 'pass rules with the force of law.'" *Id*. (quoting *Luis v. RBC Capital Mkts., LLC*, 401 F.Supp.3d 817, 821 (D. Minn. July 11, 2019)).

[2] The Court is satisfied that Rhodes complied with the necessary preliminary steps before bringing his Title VII claim. Rhodes attaches the Equal Employment Opportunity Commission's right-to-sue letter for his Title VII claim, which was issued on November 14, 2025. ECF No. 2-1. Rhodes initiated this action within ninety days of that letter being issued, rendering this action timely. *See* 42 U.S.C. § 2000e-5(f)(1).

April 2, 2026, Edward Jones filed the instant motion and brief in support seeking to compel arbitration of Rhodes's claims pursuant to the FAEA's Arbitration Clause.  ECF Nos. 13 & 14.

## DISCUSSION

The Federal Arbitration Act ("FAA") permits "parties to use arbitration, instead of lawsuits, to resolve their disputes." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).  "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing 9 U.S.C. § 4).  "The FAA promotes a 'liberal federal policy favoring arbitration agreements,' and 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Triplet*, 42 F.4th at 870 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  A written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Therefore, a court's task is to determine 1) if there is an enforceable arbitration agreement, and, if there is, 2) whether the arbitration agreement covers the dispute.  *See Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021).  "State contract law governs whether a valid agreement to arbitrate exists."  *Triplet*, 42 F.4th at 870.  If there is a valid arbitration agreement, "the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.  "The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate." *BSI Grp. LLC v. EZBanc Corp.*, 122 F.4th 712, 715 (8th Cir. 2024).  "The party resisting arbitration bears the burden of showing either that

the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet*, 42 F.4th at 870. If a court finds that a dispute is subject to arbitration, the FAA compels a court to stay the proceedings while arbitration runs its course. *Smith v. Prizzirri*, 601 U.S. 472, 478 (2024) (citing 9 U.S.C. § 3).

Edward Jones argues that Rhodes's claims are clearly subject to the Arbitration Clause. Edward Jones first contends that the FAEA and its Arbitration Clause are valid and enforceable under Missouri law. Edward Jones then emphasizes the broad language in the Arbitration Clause stating that "any dispute, claim or controversy arising under [the FAEA] or as a result of [Rhodes's] employment" shall be resolved via arbitration. FAEA ¶ 17. Because Rhodes's claims directly involve his employment, Edward Jones contends that they easily fit within the scope of the matters the parties agreed to resolve through arbitration. As to the FINRA Agreement's statement that employment discrimination claims are not required to be arbitrated, Edward Jones contends that the broad language of the Arbitration Clause indicates that the parties agreed that such claims are subject to arbitration.

In response, Rhodes argues that he did not agree to arbitrate his statutory discrimination claims. Rhodes first contends that the lack of any express language in the Arbitration Clause stating that it applies to federal statutory claims means that such claims are outside the scope of arbitrable matters under the FAEA. He then points to paragraph 2 of the FINRA Agreement and its statement that employment discrimination claims are not required to be arbitrated under FINRA rules. He notes that this paragraph mirrors FINRA Rule 13201(a) and its statement that statutory employment discrimination claims are subject to arbitration only if the parties have agreed so.[3] Rhodes contends that this language modifies the "any dispute" language in paragraph 1 of the

---

[3] *See* FINRA, GENERAL ARBITRATION RULES, § 13201(a), https://www.finra.org/rules-guidance/rulebooks/finra-rules/13201 (last accessed June 9, 2026).

FINRA Agreement and in the Arbitration Clause by making statutory discrimination claims inherently exempt from arbitration under the FAEA.  Rhodes asserts that this is the only reasonable reading of the FINRA Agreement that does not make paragraph 2 irrelevant and without any purpose.  He supports this interpretation by noting that FINRA personnel agreed with this reading when Rhodes inquired via email about the impact of the language in paragraph 2 of the FINRA Agreement on the FAEA Arbitration Clause.  ECF No. 2-1, p. 13-14.  In reply, Edward Jones first argues that the Court determines arbitrability, not hearsay in an email from a FINRA employee.  Edward Jones then contends that the Eighth Circuit has clearly held that individual agreements may subject statutory claims to arbitration and do not require the express language Rhodes insists upon.  Edward Jones also reiterates that the "any dispute" language in the Arbitration Clause clearly encompasses Rhodes's employment-related claims and provides the simplest application of the liberal federal policy favoring arbitration.

The Court finds that it must grant the request to compel arbitration.  Because Rhodes does not dispute that the FAEA is valid and enforceable, the only question is whether his employment discrimination claims are subject to the Arbitration Clause. [4]  *See Foster*, 15 F.4th at 862.  Initially, the Court notes that Rhodes is mistaken that statutory discrimination claims must be explicitly referenced in an arbitration clause to be within its reach—his emphasis on "clear and unmistakable" language comes from a rule that specifically applies to collective bargaining agreements.  *See Wright v. Univ. Mar. Serv. Corp.*, 525 U.S. 70, 80 (1988).  Individual consensual agreements to arbitrate can encompass statutory employment discrimination claims.  *Lyster v.*

---

[4] Upon its own review, the Court finds that the arbitration clause is valid and enforceable under Missouri law.  *See, e.g., State ex rel Hewitt v. Kerr*, 461 S.W. 3d 798, 808-09 (Mo. 2015) (finding that an arbitration clause in an employment contract satisfied all the demands of an enforceable contract when it required both parties to resolve disputes through arbitration); *see also Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 411 S.W.3d 184, 198 (Ark. 2012) (noting that an effective choice-of-law provision in a contract will govern the law applicable to a contract).

*Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837 (8th Cir. 1997).  Further, if "the [arbitration] clause is broad, the 'liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision."  *Unison Co., Ltd. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (quoting *3M Co.*, 542 F.3d at 1199).  Rhodes's discrimination claims clearly "touch matters" covered by the broad language in the Arbitration Clause encompassing "any dispute" arising from Rhodes's employment with Edward Jones, which obligates the Court to send Rhodes's claims to arbitration.  *Id*.

Rhodes's argument relying on the language in the FINRA Agreement cannot avert this outcome.  The parties provide dueling interpretations of how the Arbitration Clause and the second paragraph of the FINRA Agreement interact.  Edward Jones insists that the "any dispute" language in the FAEA arbitration clause demonstrates that the parties agreed to arbitrate discrimination claims in satisfaction of paragraph 2 of the FINRA Agreement.  Rhodes counters that the only rational reading is that paragraph 2 of the FINRA Agreement is an inherent term of the Arbitration Clause that would require explicit language to negate.  Both interpretations have merit.  Consequently, the liberal federal policy favoring arbitration requires that Edward Jones's request to arbitrate be granted.  *See 3M Co.*, 542 F.3d at 1199 ("Given the broad scope of the arbitration clause . . . we conclude that it cannot be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers [plaintiff's] claims."); *and see Moses H. Cone*, 460 U.S. at 941 (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself* or an allegation of waiver, delay, or a like defense to arbitrability.") (emphasis added).

**CONCLUSION**

For the reasons stated above, Defendant Edward Jones's Motion to Compel Arbitration (ECF No. 13) is hereby **GRANTED**. Accordingly, this matter is hereby **STAYED** pending the outcome of arbitration between Rhodes and Edward Jones pursuant to the FAEA's Arbitration Clause.

**IT IS SO ORDERED**, this 15th day of June, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
Senior United States District Judge